IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

QUINN NGIENDO,

                    Plaintiff,

vs.                                    Case No. 18-4127-SAC-TJJ

PEP-KU,LLC, AMELIA LUDLOW,
MADISON CLINE and LUCY EVANS,

                    Defendants.

## O R D E R

This is an action alleging violations of the federal Fair Housing Act and making state law claims. Plaintiff is <u>pro se</u> and proceeding in forma pauperis. In her original complaint, plaintiff alleged that she was a 46-year old black woman from Kenya who was subjected to a hostile housing environment after three much younger white university students – defendants Amelia Ludlow, Madison Cline and Lucy Evans - moved into an apartment which she had leased from defendant Pep-KU, LLC. According to the original complaint, problems developed almost immediately when Ludlow and Cline moved into the apartment on August 15, 2017. There was an argument which led to a police call on August 27, 2017, according to the original complaint.[1] An eviction proceeding against plaintiff was initiated and continued into September 2017. This led to plaintiff moving out on September 30, 2017.

---

[1] Plaintiff's proposed third amended complaint states that the police call occurred on August 28, 2017. Doc. No. 64, p. 7.

1

Ruling upon motions to dismiss the original complaint filed by Pep-KU and Ludlow, the court held that the original complaint failed to state a federal cause of action. Doc. No. 16. The court dismissed the original complaint but permitted plaintiff to file an amended complaint which is Doc. No. 27.

This case is now before the court upon three motions to dismiss the amended complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Doc. Nos. 32, 33 and 57. The motions are filed on behalf of defendants Pep-KU, LLC, Amelia Ludlow and Madison Cline. Plaintiff has filed a motion for leave to file a surreply relating to Ludlow's motion to dismiss. Doc. No. 60. Ludlow has filed a motion to strike plaintiff's surreply. Doc. No. 58.

Also pending before the court is plaintiff's motion for leave to file a third amended complaint or in the alternative to supplement (Doc. No. 48) with two affidavits in support (Doc. Nos. 49 & 53). On plaintiff's motion (Doc. No. 44), the court has dismissed without prejudice defendant Lucy Evans, who has not been served with process. Doc. No. 46. However, plaintiff's recently filed proposed third amended complaint (Doc. No. 64) again names Evans as a defendant.

I. Pro se standards

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted

2

by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

A pro se litigant, however, is not relieved from following the

same rules of procedure as any other litigant. See Green v.

Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). A district court

should not "assume the role of advocate for the pro se litigant."

Hall, supra. Nor is the court to "supply additional factual

allegations to round out a plaintiff's complaint." Whitney v.

State of New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

II. Rule 12(b)(6) standards

When deciding whether plaintiff's complaint "fails to state

a claim upon which relief may be granted," the court must determine

whether the complaint contains "sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint

will not "suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at

557).

> The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility
> of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 557). A plausibility analysis

is a context-specific task depending on a host of considerations,

including judicial experience, common sense and the strength of competing explanations for the defendant's conduct. See id. at 679; Twombly, 550 U.S. at 567. Overly general allegations may not nudge "claims across the line from conceivable to plausible." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at 570). A prima facie case is not required, but the court may refer to the standards for a prima facie case to determine whether a plausible claim has been stated. Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

III. The amended complaint – Doc. No. 27

The amended complaint alleges that defendant Pep-KU, LLC operates a housing complex called "the Reserve" geared toward university students in Lawrence, Kansas. Plaintiff, who is black and a native Kenyan, began living at the Reserve in April 2016. More than a year later, in August 2017, three white roommates were assigned to live in plaintiff's apartment. These were defendants Amelia Ludlow and Madison Cline (who were long-time friends), and Lucy Evans who was from the United Kingdom. The unit had four bedrooms – one for each occupant – and two bathrooms, a kitchen and a living area which were shared.

Plaintiff alleges that she was constructively evicted from the apartment because: a) her milk would constantly go bad, suggesting that it was taken out of the refrigerator intentionally to spoil and later returned to the refrigerator; b) her roommates

would hide the television remote control; c) Evans left her dirty undergarment on plaintiff's clean bath towel in the bathroom plaintiff shared with Evans, but did not "sincerely apologize" when caught in the act (Doc. No. 27, p. 5); d) Evans created a scene when plaintiff told her she needed to remove herself from Ludlow and Cline's situation; e) Ludlow, Cline and Evans would take over the living room and dining tables, leaving plaintiff to sit in her bedroom and consume meals; f) violent malicious notes were placed around the kitchen as harassments; and g) Ludlow, Cline and Evans ran up a very large electricity bill and Ludlow wasted electricity by leaving fans on while gone, but all three women never paid each one's share. Plaintiff further alleges that Ludlow played very loud music and one day played "very loudly n---a music."[2] Doc. No. 27, p. 4. She also alleges that once Ludlow's boyfriend brought nine men to their very small living room.

As evidence of intentional racial discrimination, the amended complaint alleges that Ludlow commented to Cline's mother when Ludlow and Cline were moving in, that Cline will "help move her out."[3] Doc. No. 27, p. 3. Plaintiff understood this as referencing plaintiff. Plaintiff further alleges: that Ludlow and Cline made

---

[2] The proposed third amended complaint indicates that this music was played loudly on "undocumented dates." Doc. No. 64, p. 4. In plaintiff's proposed surreply (Doc. No. 56, p. 9), she indicates that the music with the "n---a" lyrics was played on one day and that Ludlow played "another disruptive very loud music" on September 30, 2017, when plaintiff was moving out.

[3] The proposed third amended complaint indicates that plaintiff was in another room and overheard this statement. Doc. No. 64, p. 3.

"harassing comments" suggesting they needed the pantry, cupboards and drawers for themselves and made the kitchen a hostile place for white tenants use only; that plaintiff was subjected to intrusive loud music without protection by the landlord; that in July 2017, before Cline, Ludlow and Evans moved in, a manager for the landlord asked, with a tone offensive to plaintiff, where she was from and then left in a very cold manner; that the manager never apologized after plaintiff was locked out of her housing and sought help from an inebriated staff member who left her standing out in the cold for an hour and forty minutes;[4] and that the manager turned up loud music when plaintiff was filling out a lease agreement form even though plaintiff was trying to make phone calls. Doc. No. 27, pp. 6-7.

IV. The Fair Housing Act

The court construes plaintiff's claims as being brought under Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act, 42 U.S.C. §§ 3601-3631. Under 42 U.S.C. § 3604(b), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The Act also makes it unlawful "to coerce, intimidate,

---

[4] This also was before Cline, Ludlow and Evans moved in.

threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. § 3617. These sections have been interpreted to prohibit discriminatory harassment that unreasonably interferes with the use and enjoyment of a home, i.e., a hostile housing environment. Wetzel v. Glen St. Andrew Living Community, LLC, 901 F.3d 856, 861 (7th Cir. 2018).

## V. Hostile housing environment

This court has stated that the elements necessary for a prima facie case of hostile housing environment are: 1) plaintiff is a member of a protected class; 2) the conduct was unwelcome; 3) the conduct was based on the plaintiff's protected characteristic; 4) it was sufficiently severe or pervasive to alter the plaintiff's living conditions and create an abusive environment; and 5) defendant knew or should have known about the harassment. Smith v. Mission Assocs. Ltd. P'ship, 225 F. Supp. 2d 1293, 1298-99 (D. Kan. 2002); see also Jackson v. Park Place Condominiums Ass'n, Inc., 619 Fed.Appx. 699, 703 (10th Cir. 2015). The court finds that plaintiff has not alleged facts in the amended complaint which plausibly demonstrate that plaintiff's living conditions were sufficiently severe or pervasive to create an abusive environment; that the alleged harassment was based upon plaintiff's race; or that PEP-KU knew or should have known about the harassment.

A. <u>Severe and pervasive</u>

In the order ruling upon the previous motions to dismiss, the court described the strong showing necessary to state a claim for a hostile housing environment.

> To state a claim for a hostile housing environment, the offensive behavior must be severe or pervasive, not isolated or trivial. <u>Honce v. Vigil</u>, 1 F.3d 1085, 1090 (10th Cir. 1993). Casual . . . manifestations of a discriminatory environment are insufficient. <u>Id.</u> "Hostile environment claims usually involve a long-lasting pattern of highly offensive behavior." <u>Id.</u> . . . "Whether an environment is illegally hostile or abusive 'can be determined only by looking at all the circumstances, and factors may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the use and enjoyment of the premises].'" [<u>Jackson</u>, 619 Fed.Appx. at 704 (quoting <u>DiCenso v. Cisneros</u>, 96 F.3d 1004, 1008 (7th Cir. 1996))].

Doc. No. 16, p. 7. See also, <u>Mohamed v. McLaurin</u>, 2019 WL 2296181 *19-20 (D.Vt. 5/30/2019)(requiring proof of discriminatory harassment making the residence unfit for occupancy). In the context of a hostile <u>work</u> environment claim, the Tenth Circuit has stated that the law does not establish a general civility code for the workplace and that "'run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon . . . is not the stuff'" of a hostile environment claim. <u>Payan v. United Parcel Service</u>, 905 F.3d 1162, 1170-71 (10th Cir. 2018) quoting <u>Morris v. City of Colorado Springs</u>, 666 F.3d 654, 664 (10th Cir. 2012). In <u>Payan</u>, the court described disrespectful, critical and condescending

behavior by a supervisor toward the plaintiff during weekly conference calls, but the Tenth Circuit held it was not objectively sufficient to create a hostile working environment. 905 F.3d at 1171-72.

The court finds that plaintiff's amended complaint does not plausibly describe severe and pervasive behavior which reaches the standard for a hostile living environment. Plaintiff's claim of "violent malicious" notes left around the kitchen cannot support a claim of severe and pervasive behavior because the allegation is too general. Plaintiff does not describe the language on the notes in the amended complaint or indicate that she objected to defendants about the notes.[5] Plaintiff's other claims also do not describe a severe and abusive environment. She suspects, because her milk prematurely spoiled, that one or more of her roommates left plaintiff's milk out and then put it back in the refrigerator.[6] She believes that one or more of her roommates hid the remote control.[7] She claims her roommates took over the living room and

---

[5] In her response to a motion to dismiss, plaintiff indicates that she was humiliatingly ridiculed by notes that suggested that the kitchen smelled or might smell very fishy. Doc. No. 45, p. 7.

[6] In her response, plaintiff states she "highly believes" Ludlow was involved in this as "the master planner." Doc. No. 45, p. 8. In her proposed third amended complaint plaintiff claims that food went bad with prior roommates as well and she asserts that one time her refrigerator was unplugged. Doc. No. 64, p. 31. She insinuates that the defendant landlord or her prior roommates were responsible for these incidents and suspects that the landlord allowed persons into her apartment to smoke marijuana and dirty her linen. Doc. No. 64, p. 30.

[7] Plaintiff's response states that Ludlow and Cline hid the remote control. Doc. No. 45, p. 8.

dining tables. And, she further claims that Ludlow played loud music. How often and how long this occurred around plaintiff is not specified. The amended complaint indicates that Ludlow played very loud music "the first time" and that Ludlow again played very loud intrusive music when plaintiff was moving out. Doc. No. 27, p. 8. The word "n---a" in the music was offensive to plaintiff because of the animosity or ridicule she felt from her roommates.[8] But, plaintiff's feelings are not sufficient under the law to describe a plausible claim of a hostile housing environment. See Morris, 666 F.3d at 664 (severity of alleged harassment must be determined from the perspective of a reasonable person in plaintiff's position). Situations which may reasonably give rise to wounded feelings will not on that account be considered severe or pervasive. Id. citing and quoting EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). All of the alleged harassment from the individual defendants occurred over a relatively short period of time. It did not involve physical threats or physical humiliation. No specifically alleged facts indicate that plaintiff was verbally threatened or abused in a manner which would force a reasonable person from maintaining the use of the apartment. Nor do the other actions alleged by

---

[8] Plaintiff states in her surreply that she has heard "a lot of 'n---a lyrics'" played by different races including Caucasians but "never thought for a minute" that one white friend who played such music all the time was a racist. Doc. No. 56, pp. 8-9.

plaintiff demonstrate a severe and abusive environment, as opposed to a brusque, disagreeable or frustrating living situation.

B. Racial motivation

Plaintiff fails to describe facts demonstrating a racial motive by the individual defendants in this case. As already noted, she asserts that one day Ludlow played loud music which used a racially offensive term, but plaintiff apparently does not consider the music necessarily racist or that people who play the music are necessarily racist because she had a white friend play music that used the offensive term and she did not consider that person to be a racist. Doc. No. 56, pp. 8-9. She also does not describe the music, the lyrics, or the artist.[9] Such facts might make the inference of a racial motive more or less plausible. In addition, plaintiff does not show that Ludlow knew that the music would be offensive to plaintiff before Ludlow first played it or that Ludlow played the music after plaintiff objected.[10] Plaintiff alleges that Ludlow made "sure everyone was gone when she did this, and then gave [the] lame excuse [she] did not know [plaintiff] was around." Doc. No. 27, p. 4.

---

[9] In the proposed third amended complaint, plaintiff indicates that the music was performed by a black artist. Doc. No. 64, p. 4.

[10] As mentioned, plaintiff has alleged that Ludlow played loud "intrusive" music on September 30, 2017 as plaintiff was moving out of the apartment. She does not allege the music contained offensive language. Doc. No. 27, p. 8.

C. Pep-KU's role

The amended complaint does not describe facts showing that defendant Pep-KU, LLC was responsible for the actions which caused the alleged hostile housing environment.

VI. Eviction

Plaintiff alleges that she was evicted or ejected, although the facts alleged in the amended complaint do not explain the eviction process. The amended complaint also does not allege facts plausibly showing that there was a racial motive behind plaintiff's alleged eviction by defendant Pep-KU. As possible evidence of racial motivation, plaintiff asserts that the landlord's manager in July 2017 asked plaintiff where she was from with an offensive tone and left acting in a very cold manner without responding to plaintiff's asking whether he had a problem with her national origin. Such a stray remark or isolated incident does not nudge plaintiff's claim of eviction on the basis of her race or national origin from possibility to plausibility. See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir.)(concluding that isolated, ambiguous and/or abstract remarks may be too abstract to support an inference of age discrimination); Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994)(same); Favourite v. 55 Halley St., Inc., 381 F.Supp.3d 266, 280-81 (S.D.N.Y. 2019)(same in the context of a race discrimination claim under the Fair Housing Act).

Plaintiff claims that the manager played loud music, interfering with phone calls she was attempting to make during the process of leasing an apartment. She further claims that she experienced rudeness during and after she was locked out of her apartment on a cold night and asked for help from an inebriated staff member. Each of these events occurred a considerable time before plaintiff's alleged eviction and have no obvious link to the eviction. They also represent plaintiff's subjective interpretation of her treatment and speculative inference of prejudice. This is insufficient to describe a claim of discrimination. See <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1194 (10th Cir. 2012)(that plaintiff is Muslim and Arab-American and was physically assaulted (grabbed by the arm) is not sufficient evidence to support a claim of discriminatory or retaliatory termination). Plaintiff should know the reasons given for her alleged eviction and why those reasons are pretextual. The amended complaint does not describe the history or practice of rules enforcement at the Reserve. Furthermore, while plaintiff suggests that Pep-KU did not enforce rules governing loud music against defendant Ludlow, she does not allege that rules against loud music were enforced against black tenants or Kenyan tenants and she does not allege that the rules violations or reasons for eviction alleged against her were not enforced by Pep-KU against white

tenants or tenants from the United States.[11]  Plaintiff tries to compare loud yelling at Ludlow, for which she was faulted by the landlord, to loud music played by Ludlow without consequences. Doc. No. 27, p. 8.  This is not an apt comparison, in part because plaintiff does not describe the reasons given for her alleged eviction.

A plaintiff must include enough context and detail to link the alleged discriminatory action to a discriminatory motive with something besides sheer speculation.  Bekkem v. Wilkie, 915 F.3d 1258, 1274-75 (10th Cir. 2019).  An allegation of similarly situated persons is just a legal conclusion which is not sufficient to support a claim.  Id. at 1275.  Here, the amended complaint fails to allege facts showing similarly situated tenants were treated differently.  See id. at 1275 (allegation that non-reprimanded doctors were similarly situated because they sent similar emails on similar issues is too conclusory to permit a reasonable inference of differential treatment); Hwang v. Kansas State University, 753 F.3d 1159, 1164 (10th Cir. 2014)(that some non-disabled University employees received sabbaticals is not sufficient to allege a disabled plaintiff who did not receive a sabbatical is similarly-situated to those employees); see also

---

[11] In the proposed third amended complaint, plaintiff admits that the defendant landlord rents to persons of different races and national origins.  She claims that the defendant landlord then shows preference to white tenants and takes discriminatory actions to remove non-white tenants.  Doc. No. 64, p. 31.

<u>McGowan v. City of Eufala</u>, 472 F.3d 736, 745 (10th Cir.
2006)(officers who made different mistakes and engaged in
different conduct with regard to a prison suicide were not
similarly situated for the purposes of showing disparate
treatment).

VII. <u>Plaintiff's state law claims</u>

    Because this case is at a very early stage and the court finds
that the amended complaint fails to state a claim for relief under
federal law, the court declines to exercise supplemental
jurisdiction over plaintiff's state law claims.   "[I]n the usual
case in which all federal-law claims are eliminated before trial,
the balance of factors to be considered under the [supplemental]
jurisdiction doctrine - - judicial economy, convenience, fairness
and comity - - will point toward declining to exercise jurisdiction
over the remaining state law claims."   <u>Carnegie-Mellon Univ. v.
Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

VIII. <u>Plaintiff's motion for leave to file a third amended
complaint or in the alternative to supplement all deficient
pleadings</u>

    Plaintiff has asked for leave to file a third amended
complaint or a supplement to her pleadings.  Doc. No. 48.  The
court shall treat the motion as a motion for leave to file a third
amended complaint.   Plaintiff recently submitted a copy of the
proposed third amended complaint.  Doc. No. 64.  The court may
deny leave to amend where the amendment would be futile, that is

15

if the complaint as amended would be subject to dismissal. <u>Bradley v. Val-Mejias</u>, 379 F.3d 892, 901 (10th Cir. 2004). As explained below, plaintiff's request for leave to file a third amended complaint shall be denied because the third amended complaint does not state a plausible federal claim.

A. <u>New legal claims</u>

The proposed third amended complaint contains some new legal claims.

1. <u>Advertisements</u>

As part of Count I of the proposed third amended complaint plaintiff states generally:

> Defendant landlord's repeat incidents including its ways of advertisements including of events and activities hosted, shows special preferences of white race tenants in housing. Pool parties, and other repeat incidents discoveries, shows white race as a beautifully, favorable and likeable in its rentals . . .

Doc. No. 64, p. 10.

> The Fair Housing Act makes it unlawful:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c). Here, plaintiff's allegations are too vague to describe a plausible claim for a violation of § 3604(c).[12] See

---

[12] In her motion for leave to file a third amended complaint (Doc. No. 48, p. 10), plaintiff indicates that defendant landlord gave her a proposed lease

<u>Tyus v. Urban Search Mgmt.</u>, 102 F.3d 256, 264-65 (7th Cir. 1996)(the law does not automatically make every ad showing persons of only one race actionable); see also <u>Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.</u>, 943 F.2d 644, 648 (6th Cir. 1991)(single publication of an advertisement which uses a small number of all-white models does not violate § 3604(c)). Plaintiff does not allege facts, as opposed to conclusory remarks, plausibly describing a "notice, statement or advertisement" which "indicates any preference, limitation, or discrimination based on race, color . . . or national origin or an intention to make such a preference."

    2. <u>Retaliation</u>

Plaintiff states in Count II of the proposed third amended complaint that her friend's luxury car was badly scratched at the apartment complex on September 30, 2017 when plaintiff, with her friend's help, was moving out. Plaintiff, however, does not claim an ownership interest in the car and does not claim she was injured because of this alleged retaliation. Therefore, she does not have standing to bring this claim. See <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 372 (1982)(to have standing, plaintiff must allege a distinct and palpable injury). She also does not allege facts

---

contract in a folder that had pictures with all-white models at a pool party. This is also too vague to plausibly describe a violation of § 3604(c).

plausibly demonstrating that defendants were responsible for the scratch, although she makes that insinuation.

In addition, plaintiff contends that defendant landlord commenced the eviction action against plaintiff to retaliate against plaintiff for making a complaint against defendant Ludlow "of suspected racial advances and aggressions towards her in her loud n---a lyric that disrupted Plaintiff's peaceful enjoyment of premises, and also asking defendant roommates stop making malicious statement to landlord to put her out for participating in fair housing as a black race tenant and wanting white roommate situation." Doc. No. 64, p. 16.

A claim for retaliation in violation of the Fair Housing Act, 42 U.S.C. § 3617, requires facts showing coercion, intimidation, threats against or interference with "any person in the exercise of enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise of enjoyment of, any right granted or protected by sections 3603, 3604, 3605 or 3606" of Title 42. See also <u>Kelly v. Topeka Housing Authority</u>, 2004 WL 2378839 *4 (D.Kan. 10/13/2004)(listing elements of prima facie case under § 3617). Here, the court is examining whether plaintiff has stated a claim for retaliation against plaintiff for allegedly making a complaint against practices prohibited by the Fair Housing Act. The actions complained of by plaintiff - that defendant Ludlow played loud

music with offensive language and that defendant roommates made malicious statements to defendant landlord - cannot be reasonably believed sufficient to violate the Fair Housing Act because the alleged facts do not show that these events created a severe and pervasively hostile living environment and that they were motivated because of a protected characteristic. Therefore, plaintiff has not stated a claim for retaliation. See Fassbender v. Correct Care Solutions, LLC, 890 F.3d 875, 891 (10th Cir. 2018)(applying reasonable belief standard to Title VII retaliation claim involving allegation of termination in retaliation for opposing sexual harassment).

Furthermore, in the proposed third amended complaint, plaintiff does not allege facts showing when or to whom she made her complaint.[13] Therefore, plaintiff fails to plausibly describe facts showing that the eviction action, which (according to the proposed third amended complaint) was initiated on August 29, 2017, was motivated to retaliate against a complaint made by plaintiff.

3. Disability

In Count III of the proposed third amended complaint, plaintiff alleges a violation of the Fair Housing Act's provisions

---

[13] In the surreply, plaintiff alleges that the defendant landlord learned of her complaint about the loud music with the "n---a" lyrics because defendant Ludlow reported to the landlord after their argument on August 27 or 28, 2017 that plaintiff attacked Ludlow for playing such music. Doc. No. 56, p. 8. But, complaining to a roommate is not a right granted or protected by the Fair Housing Act and does not provide grounds for a retaliation claim.

barring discrimination on the basis of disability, illness or handicap. Plaintiff alleges that she has fibromyalgia which impacts her mental health and that she has "post trauma stress sensitivity to noise." Doc. No. 64, pp. 18-19. Plaintiff asserts that the defendant landlord should have been aware of plaintiff's disabilities because a local community mental health center paid plaintiff's rent one month. Plaintiff also faults defendant landlord for failing to investigate whether plaintiff had a disability which warranted a lenient application of the lease terms, instead of charging plaintiff with "not getting along with roommates and adjusting lifestyle." Id. at p. 18.

To state a plausible claim of handicap discrimination under the Fair Housing Act, plaintiff must allege facts demonstrating that plaintiff has "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) [is] regarded as having such an impairment." 42 U.S.C. § 3602(h). "Major life activities" include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. Rodriguez v. Village Green Realty, Inc., 788 F.3d 31, 40 (2nd Cir. 2015). A major life activity is "substantially limited" if the impairment prevents or severely restricts the major life activity and has a permanent or long-term impact. Id. at 43. Plaintiff's proposed third amended complaint

does not allege facts plausibly showing that her alleged handicaps substantially limited her major life activities during the time period in question. Nor does it allege facts showing that plaintiff has a record of such an impairment or is regarded as having such an impairment. The proposed third amended complaint also fails to allege facts showing that defendant landlord knew or reasonably should have known of plaintiff's handicap or that she requested an accommodation. Such allegations are required to state a claim for failure to make a reasonable accommodation. See <u>Parham v. CIH Properties, Inc.</u>, 148 F.Supp.3d 5, 12 (D.D.C. 2015).

B. <u>New factual allegations</u>

The proposed third amended complaint contains some factual allegations relating to plaintiff's Fair Housing Act claims which are not made in the amended complaint. These allegations include the following. Plaintiff alleges that defendants Ludlow and Cline cringed when they first saw plaintiff and manifested cultural shock. Doc. No. 64, p. 2. She states that Ludlow and Cline exhibited passive animosity toward plaintiff and that Ludlow and Cline would not talk to plaintiff as they were moving in. <u>Id.</u> at p. 3. She claims that Ludlow and Cline followed plaintiff around setting limits and that once, following a conversation with plaintiff, plaintiff overheard Ludlow say to Cline, "what a horrible accent" which caused Cline to laugh uproariously. <u>Id.</u> at pp. 5-6. Plaintiff alleges that Ludlow and Cline falsely told the

landlord that plaintiff inquired into their "grinding and bumping a lot" while performing sexual acts. Id. at pp. 2-3. She asserts that during the argument which led Ludlow to call the police on August 27 or 28, 2017, Ludlow banged the table to intimidate plaintiff. Id. at pp. 6-7. Plaintiff claims that, as they argued, she asked Ludlow and Cline to stop making malicious statements to the landlord, addressed the loud "n---a" music that caused her to feel uncomfortable, and asked them to lower the volume of the music to accommodate her noise-sensitivity disability. Id. at p. 7. Finally, plaintiff asserts that, after the police arrived, an officer asked Ludlow, Cline and Evans if they wanted plaintiff out and they all yelled "yes." Id.

These allegations when added to the others plaintiff has made in this case are insufficient to state a plausible claim that defendants, together or individually, created a severe and pervasively hostile living environment or that they were motivated by plaintiff's race or national origin. The court has considered all of plaintiff's allegations in the proposed third amended complaint and concludes that they fail to state a plausible claim for a violation of federal law.

C. Starra LNU

The proposed third amended complaint seeks to add "Starra" or "Starra Doe" as a defendant on a tortious interference with

contract claim and a personal injury claim.[14]  Id. at pp. 22 & 29.

Plaintiff has identified "Starra" as one of plaintiff's roommates

prior to Ludlow, Cline and Evans.  She claims that "Starra" and

the other individual defendants made malicious statements to the

defendant landlord causing the landlord to discontinue the lease

contract with plaintiff.[15]  This is a state law claim.  Because the

court concludes that plaintiff's proposed third amended complaint

fails to state a claim under federal law, the court finds no

grounds to consider this claim or the other state law claims in

the third amended complaint.[16]

## IX. Motion for leave to file a surreply

Plaintiff has filed a motion seeking leave to file a surreply

in response to defendant Ludlow's reply in support of her motion

to dismiss.  Doc. No. 60.  She filed the motion for leave after

she filed the surreply and after defendant Ludlow opposed the

surreply.  Defendant Ludlow has filed a motion to strike the

surreply.  Doc. No. 58.

---

[14] Plaintiff does not know Starra's last name.

[15] In her motion for leave to file a third amended complaint, plaintiff claims
that "Starra" caused fire-related incidents that led plaintiff to "give harsh
feedback" to the defendant landlord and request relocation to lower floors.
Doc. No. 48, pp. 1-2.  This is not mentioned in the proposed third amended
complaint.  In her amended complaint (Doc. No. 27, p. 10), plaintiff also
complains of "another constructive ejectment in progress" at a different
apartment and of a roommate "not willing to clean after himself."  But, she has
not made these allegations in the proposed third amended complaint or raised
them as a claim in the amended complaint.

[16] Plaintiff's personal injury claim seems to be, at least in part, a description
of plaintiff's damages.  The court finds that it fails to state a plausible
violation of federal law and that, to the extent it is intended to be a state
law claim, the court shall decline to exercise supplemental jurisdiction over
it.

Surreplies are permitted in rare cases such as where a movant improperly raises new arguments in a reply brief. See <u>Mansoori v. Lappin</u>, 2007 WL 401290 *1 (D.Kan. 2/1/2007); <u>Taylor v. Sebelius</u>, 350 F.Supp.2d 888, 900 (D.Kan. 2004). Plaintiff has not offered good grounds to grant leave to file a surreply other than the liberal approach taken toward <u>pro se</u> pleadings. In most cases, the court would strike plaintiff's surreply. But, because there has been some difficulty in interpreting plaintiff's allegations and because she is entitled to some leniency as a <u>pro se</u> litigant, the court shall permit the filing of the surreply. The court, however, has determined that the surreply contains nothing which would alter the outcome of this order.

X. <u>Conclusion</u>

For the above-stated reasons, the court shall grant plaintiff's motion for leave to file a surreply. Doc. No. 60. The motion to strike the surreply (Doc. No. 58) is denied. The court shall dismiss the federal claims in the amended complaint and decline to exercise supplemental jurisdiction over the state law claims. Consistent with this order, the motions to dismiss at Doc. Nos. 32, 33 and 57 are granted. Finally, the motion for leave to file a third amended complaint (Doc. No. 48) is denied as futile and this case is ordered closed.

**IT IS SO ORDERED.**

Dated this 30th day of July, 2019, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge